Katherine Kelly Lutton (SBN 194971)
lutton@fr.com
Shelley K. Mack (SBN 209596)
mack@fr.com
Jerry T. Yen (SBN 247988)
yen@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:  (650) 839-5070
Facsimile:   (650) 839-5071

Adam J. Kessel (of counsel)
kessel@fr.com
FISH & RICHARDSON P.C.
ONE Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Attorneys for Defendants/Counterclaim-Plaintiffs
RED HAT, INC. AND GLUSTER, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TWIN PEAKS SOFTWARE INC., | Case No.  5:12-cv-00911 RMW |
| Plaintiff/Counterclaim-Defendant, | **DEFENDANTS/COUNTERCLAIM-PLAINTIFFS RED HAT, INC.'S AND GLUSTER, INC.'S FIRST AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF TWIN PEAKS SOFTWARE INC.'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| RED HAT, INC. AND GLUSTER, INC., | |
| Defendants/Counterclaim-Plaintiffs. | |
| | **DEMAND FOR JURY TRIAL** |

Pursuant to Rules 8 and 15(a)(3) of the Federal Rules of Civil Procedure, Defendants Red Hat, Inc. ("Red Hat") and Gluster, Inc. ("Gluster") (collectively, "Defendants") hereby amend their answer and counterclaims in response to Plaintiff Twin Peaks Software Inc.'s ("Plaintiff" or "Twin Peaks") First Amended Complaint for Patent Infringement (D.I. 22).  Defendants deny each and every allegation contained in the First Amended Complaint that is not expressly admitted below.  Any factual allegation below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications or speculations that arguably follow from the admitted facts.  Defendants deny that Plaintiff is entitled to the relief requested or any other relief.

## ANSWER

1.      On information and belief, Defendants admit that Plaintiff is a California corporation with its principal place of business at 46732 Fremont Blvd., Fremont, California 94538.  Defendants lack sufficient knowledge to admit or deny the remaining allegations of Paragraph 1 and therefore deny those allegations.

2.      Defendants admit that Red Hat is a Delaware corporation with its principal place of business at 1801 Varsity Drive, Raleigh, North Carolina 27606.

3.      Defendants deny that Gluster is a California corporation having its principal place of business at 640 W. California Ave., Suite 200, Sunnyvale, California 94086.

4.      Defendants admit that on or about October 4, 2011, Red Hat publicly announced that it was entering into an agreement to acquire Gluster.  Except as expressly admitted, Defendants deny the remaining allegations of Paragraph 4.

5.      Defendants admit that Gluster is a wholly-owned subsidiary of Red Hat.  Except as expressly admitted, Defendants deny the remaining allegations of Paragraph 5.

6.      Defendants admit that Plaintiff's claims for patent infringement purport to arise under the Patent Act, 35 U.S.C. §§ 101 *et seq.*, but deny that such claims have merit.  Defendants admit that this Court has subject matter jurisdiction over Plaintiff's patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Except as expressly admitted, Defendants deny the remaining allegations of Paragraph 6.

7.      Defendants admit for purposes of this action only that this Court has personal jurisdiction over Defendants.  Defendants expressly deny that they have committed any act of infringement in this judicial district or elsewhere.  Except as expressly admitted, Defendants deny the remaining allegations of Paragraph 7.

8.      Defendants admit for purposes of this action only that venue is proper in this District. Defendants expressly deny that they have committed any acts of infringement in this judicial district or elsewhere.  Except as expressly admitted, Defendants deny the remaining allegations of Paragraph 8.

9.      Defendants admit that Plaintiff has realleged and incorporated by reference its allegations in the preceding paragraphs of the First Amended Complaint.  Except as expressly admitted, Defendants deny the remaining allegations of Paragraph 9.

10.     Defendants admit that U.S. Patent No. 7,418,439 ("the '439 Patent") bears an issue date of August 26, 2008, and that a copy of the '439 Patent appears to be attached as Exhibit A to the First Amended Complaint.  Defendants admit that the first page of the '439 Patent states that the patent's title is "Mirror File System," and identifies its inventor as John P. Wong of Fremont, California.  Defendants deny that the '439 Patent was duly and lawfully issued.  Defendants lack sufficient knowledge to admit or deny the remaining allegations of Paragraph 10 and therefore deny those allegations.

11.     Defendants admit that the first page of the '439 Patent identifies Twin Peaks Software, Inc. as the Patent's assignee.  Defendants lack sufficient knowledge to admit or deny the allegations of Paragraph 11 and therefore deny those allegations.

12.     Gluster admits that it has sold the Gluster FS product, and Red Hat admits that it has sold the Red Hat Storage Software Appliance and Red Hat Virtual Storage Appliance products. Defendants expressly deny that they have directly and/or indirectly infringed any claim of the '439 Patent, whether in this District or elsewhere in the United States.  Except as expressly admitted, Defendants deny the remaining allegations of Paragraph 12.

13.     Defendants admit that Plaintiff filed its original Complaint on February 23, 2012, accusing Defendants of infringing the '439 Patent.  Red Hat further admits that it owns and is responsible for the Red Hat-branded content available on the www.redhat.com and www.gluster.com websites, including technical documentation such as Administration Guides and User Guides for its various products.  Defendants expressly deny that they have directly and/or indirectly infringed any claim of the '439 Patent, and deny that any of their customers directly infringe any claim of the '439 Patent by using any of Defendants' products.  Except as expressly admitted, Defendants deny the remaining allegations of Paragraph 13.

14.     Defendants expressly deny that they have directly and/or indirectly infringed any claim of the '439 Patent.  Defendants deny that Plaintiff is entitled to injunctive relief of any kind. Defendants further deny the remaining allegations of Paragraph 14.

15.     Defendants deny that they have directly and/or indirectly infringed any claim of the '439 Patent and deny causing any damage to Plaintiff of any kind.  Defendants further deny the remaining allegations of Paragraph 15.

## PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny the allegations of Plaintiff's Prayer for Relief and deny that Plaintiff is entitled to any relief whatsoever from Defendants.  Defendants ask that judgment be entered for Defendants and that this action be found to be an exceptional case under 35 U.S.C. § 285, entitling Defendants to an award of their reasonable attorneys' fees incurred in connection with their defense against Plaintiff's claims, together with such other and further relief as the Court deems appropriate.

## PLAINTIFF'S DEMAND FOR A JURY TRIAL

Defendants acknowledge that Plaintiff has demanded a jury trial of this action.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses in response to Plaintiff's First Amended Complaint.  Defendants reserve the right to allege additional affirmative defenses as they become known throughout the course of discovery.

1

**FIRST AFFIRMATIVE DEFENSE**

2

**(Non-Infringement)**

3      16.     Defendants have not infringed and does not currently infringe (either directly,

4    contributorily, or by inducement) any valid claim of the '439 Patent.

5

**SECOND AFFIRMATIVE DEFENSE**

6

**(Invalidity)**

7      17.     The claims of the '439 Patent are invalid and unenforceable because they fail to

8    satisfy one or more conditions for patentability set forth in 35 U.S.C. § 101 *et seq.*, including,

9    without limitation, Sections 101, 102, 103, and 112, because the alleged invention of the '439

10   Patent lacks utility, is taught by, suggested by, and/or, anticipated or obvious in view of the prior

11   art, is not enabled, and/or is unsupported by the written description of the patented invention, and no

12   claim of the '439 Patent can be validly construed to cover any of Defendants' products.

13

**THIRD AFFIRMATIVE DEFENSE**

14

**(Laches/Unclean Hands/Equitable Estoppel/Waiver)**

15     18.     Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of laches,

16   unclean hands, estoppel and/or waiver.

17

**FOURTH AFFIRMATIVE DEFENSE**

18

**(Prosecution History Estoppel)**

19     19.     Plaintiff's claims are barred by the doctrine of prosecution history estoppel based on

20   statements, representations and admissions made during prosecution of the patent application

21   resulting in the '439 Patent and/or in related patent applications.

22

**FIFTH AFFIRMATIVE DEFENSE**

23

**(Damages Limited by Statute)**

24     20.     Plaintiff's claims for damages are statutorily limited by 35 U.S.C. §§ 286 and/or 287,

25   and Plaintiff is barred by 35 U.S.C. § 288 from recovering costs associated with this action.

26

27

28

5

**SIXTH AFFIRMATIVE DEFENSE**

**(Remedies Limited by Statute)**

21.     Plaintiff's remedies are limited by 28 U.S.C. § 1498(a).

**SEVENTH AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

22.     Plaintiff's First Amended Complaint fails to state a claim for relief against Defendants.  Plaintiff's First Amended Complaint identifies no person or entity who directly infringes the claims of the '439 Patent, as required to prove indirect infringement.  Furthermore, Plaintiff's First Amended Complaint does not (and cannot) allege that Defendants' accused products lack substantial non-infringing uses, as required to prove contributory infringement.

**EIGHTH AFFIRMATIVE DEFENSE**

**(No Right to Injunctive Relief)**

23.     Plaintiff's claim for injunctive relief is barred because there exists an adequate remedy at law and Plaintiff's claims otherwise fail to meet the requirements for such relief.

**NINTH AFFIRMATIVE DEFENSE**

**(Reservation of Rights)**

24.     Defendants reserve the right to add any additional defenses (including but not limited to inequitable conduct) or counterclaims which may now exist or in the future may be available based on discovery and further factual investigation in this case.

**DEFENDANTS' COUNTERCLAIMS AGAINST PLAINTIFF TWIN PEAKS**

For their counterclaims against Plaintiff Twin Peaks, Defendants state and allege as follows:

**Nature of the Action**

25.     These counterclaims seek declaratory judgments of non-infringement and invalidity of the '439 Patent asserted by Plaintiff in this action, and judgment against Twin Peaks for copyright infringement.  Defendants seek judgment under the patent laws of the United States, 35 U.S.C. § 101, *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the copyright laws of the United States, 17 U.S.C. § 101, *et seq.*

**Parties**

26.     Defendant and Counterclaim-Plaintiff Red Hat is a Delaware corporation with a principal place of business at 1801 Varsity Drive, Raleigh, North Carolina 27606.

27.     Defendant and Counterclaim-Plaintiff Gluster is a Delaware corporation and a wholly owned subsidiary of Red Hat, with a principal place of business at 1801 Varsity Drive, Raleigh, North Carolina 27606.

28.     On information and belief, Plaintiff and Counterclaim-Defendant Twin Peaks is a California corporation with a principal place of business at 46732 Fremont Blvd., Fremont, California 94538.

**Jurisdiction and Venue**

29.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338, the patent laws of the United States set forth at 35 U.S.C. §§ 101 *et seq*., the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Copyright Act, 17 U.S.C. §§ 101 *et seq*.

30.     Plaintiff has consented to the personal jurisdiction of this Court by commencing its action against Defendants for patent infringement in this judicial district, as set forth in Plaintiff's First Amended Complaint.

31.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b), because a substantial part of the events giving rise to the counterclaims asserted herein arise in this district, and Plaintiff, upon information and belief, is and at all relevant times was doing business in this district.

**Free and Open Source Software**

32.     Free and open source software ("FOSS") is software in which the source code is made available to users for inspection, modification, and distribution.  Generally, when a computer program is authored, the programmer writes code in a human-readable programming language. This code is called "source code" and can be compiled into another form, called "object code," that is executable by a computer microprocessor.  A software product (*e.g.*, a collection of computer

programs) can be distributed solely in object code form, which allows the software product to be fully functional on a computer system but which does not enable users easily to understand or modify the software.  By contrast, the source code to FOSS is made available to the recipient under conditions set forth in an accompanying license, which grants relatively broad rights for recipients to use, copy, modify, and distribute the software, but may also limit the ways in which the code or derivative works of the code can be distributed so as to benefit the broader developer community.

33.     The benefits of the FOSS development model are widely recognized.  For example, in holding an open source license enforceable under copyright law, the Court of Appeals for the Federal Circuit noted that "[o]pen source licensing has become a widely used method of creative collaboration that serves to advance the arts and sciences in a manner and at a pace that few could have imagined just a few decades ago." *Jacobsen v. Katzer*, 535 F.3d 1373, 1378 (Fed. Cir. 2008). The Federal Circuit explained that these advances depend on the conditions provided in open source licenses:

> Open Source software projects invite computer programmers from around the world to view software code and make changes and improvements to it. Through such collaboration, software programs can often be written and debugged faster and at lower cost than if the copyright holder were required to do all of the work independently. In exchange and in consideration for this collaborative work, the copyright holder permits users to copy, modify and distribute the software code subject to conditions that serve to protect downstream users and to keep the code accessible.

*Id*. at 1379.

## Red Hat and FOSS

34.     Red Hat is a leading contributor to FOSS, including the many software packages that make up the Linux operating system.  Red Hat makes source code to Linux and its other FOSS software offerings freely available to anyone, subject to certain conditions.  Although it makes software available under open source licenses, Red Hat derives revenues from aggregating, certifying, testing, enhancing, packaging, maintaining, supporting and influencing the future direction of the software, among other value-added offerings.

35.    Over the past two decades, Red Hat, a publicly-traded company, has grown from a handful of employees to over 4,500 employees and achieved annual revenue in excess of $1 billion. Throughout this growth, Red Hat has remained committed to the open source development model. Many of Red Hat's thousands of employees have contributed and continue to contribute to the FOSS ecosystem, including by developing and releasing code under FOSS licenses.  By way of example, Red Hat is the largest corporate contributor to the Linux kernel, which is a collection of programs at the heart of the Linux operating system.

36.    Red Hat believes that the FOSS development and licensing model offers important advantages for its customers over proprietary software development and licensing models.  Through the FOSS development model, Red Hat leverages a global community of developers and users, whose collective resources and knowledge supplement Red Hat's own developers. As a result, Red Hat can offer enhancements, fixes and upgrades more quickly and with less development cost than is typical of proprietary software vendors.

**The GNU General Public License**

37.    The software that Red Hat makes available is typically distributed under a variety of well-established, open source licenses, such as the GNU General Public License (the "GPL"), that permit access to human-readable software source code as authored by contributors.  These licenses also provide relatively broad rights for licensees to use, copy, modify and distribute open source software.  These broad rights afford significant latitude for Red Hat's customers to inspect, suggest changes, customize or enhance the software if they so choose.  A copy of version 2 of the GNU General Public License (the "GPLv2") is attached hereto as Exhibit A.

38.    Although the GPL affords broad rights to software users, the GPL also includes protections to prevent misappropriation of source code.  Under the terms of the GPL, when someone obtains software subject to the GPL and then redistributes it, with or without modifications, in object code form, that person must make the complete corresponding source code freely available to recipients of the software, including any modifications to that code, under the same license—the GPL.  This critical condition of making the source code to all modifications

available with the same freedoms that came with the original is the *quid pro quo* for having benefited from the work of other developers.  That *quid pro quo* is enforced through copyright law. As Judge Easterbrook has noted, copyright law "ensures that open-source software remains free: any attempt to sell a derivative work will violate the copyright laws, even if the improver has not accepted the GPL." *Wallace v. Int'l Bus. Machines Corp.*, 467 F.3d 1104, 1105 (7th Cir. 2006).  In addition to requiring distributors of object code derived from GPL-licensed programs to provide complete corresponding source code, the GPL also requires that distributors provide their recipients with notice of the licensing terms through providing a copy of the GPL text.

39.     When Red Hat distributes works licensed under the GPL, Red Hat grants certain permissions to other parties to copy, modify and redistribute those works so long as those parties satisfy certain conditions. In particular, Section 2(b) of the GPLv2, addressing each licensee, states:

> You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License.

40.     Thus, if a licensee redistributes works licensed under the GPL (included works developed by Red Hat), it may do so only under the terms of the GPL.

41.     The GPL permits a licensee to distribute licensed works, or works based on those works, in object code form, on the condition (*inter alia*) that the licensee gives recipients access to the source code corresponding to what they distribute. Specifically, Section 3 of the GPLv2 provides:

> You may copy and distribute the Program (or a work based on it, under Section 2) in object code or executable form under the terms of Sections 1 and 2 above provided that you also do one of the following:
>
> a) Accompany it with the complete corresponding machine-readable source code, which must be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or, b) Accompany it with a written offer, valid for at least three years, to give any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange . . . .

10

1    42.    Furthermore, Section 4 of the GPLv2 states:

2         You may not copy, modify, sublicense, or distribute the Program
          except as expressly provided under this License. Any attempt
3         otherwise to copy, modify, sublicense or distribute the Program is
          void, and will automatically terminate your rights under this License.
4

5    43.    Therefore, under the GPL, any party that redistributes a work in a manner that does

6    not comply with the terms of the GPL (including, without limitation, those set out in the paragraphs

7    above) immediately and automatically loses all rights granted under it, including the right to

8    distribute the work or modified versions thereof.

9                              **util-linux and the "mount" Program**

10    44.    util-linux is a standard software package that is included in Red Hat's distribution of

11    the Linux operating system.  util-linux was created in the 1990's and has undergone continuous

12    revision and improvements by many authors since then.  It includes numerous tools that provide

13    critical basic functionality within the Linux operating system, such as making files on disks

14    available to the user of a computer system on which Linux is running.  One such tool is a program

15    called "mount."

16    45.    The "mount" program in util-linux is licensed under the GPLv2.  Both the object

17    code and the source code for the util-linux "mount" program can be freely downloaded and

18    redistributed, *provided that* the person doing so complies with the conditions of the GPLv2,

19    including the requirement to provide recipients of object code with complete corresponding

20    GPL-licensed source code.

21    46.    Red Hat, through its employee-developers, has made significant contributions to the

22    tools in the util-linux package, and to its "mount" program in particular, in the form of

23    improvements implemented in the source code.

24    47.    In February 2005, Red Hat released Red Hat Enterprise Linux 4.  Red Hat Enterprise

25    Linux (or "RHEL") is Red Hat's Linux-based operating system that is especially targeted toward

26    the commercial market.  RHEL 4 included many software packages, including a version of util-

27    linux numbered version 2.12a.

28

11

**Red Hat's Copyright Registrations**

48.    Red Hat has obtained registrations from the United States Copyright Office for its original contributions to the "mount" program in util-linux.  In particular, Red Hat is and at all relevant times has been the owner of Copyright Reg. Nos. TX 7-557-456 (August 13, 2012), entitled "Mount – 2.10m" and TX-7-557-458 (August 13, 2012), entitled "Mount – 2.12a."  True and correct copies of these registration certificates are attached hereto as Exhibit B.

**Twin Peaks' Improper Use of Red Hat's Source Code**

49.    Like Red Hat, Twin Peaks distributes software that runs on the Linux operating system.  Unlike Red Hat, however, Twin Peaks distributes software only under a proprietary license that forbids copying, and does not make any of the source code for any of its products publicly available.

50.    Twin Peaks sells, subject to its proprietary license, and without providing any source code, software that it calls an "innovative replication solution."  That software is branded as "TPS Replication Plus."

51.    Twin Peaks also provides a "free" version of its TPS Replication Plus software, called "TPS My Mirror." This version is also provided only under a proprietary license, and also without any source code or copy of the GPL.

52.    On its website, Twin Peaks represents that the "TPS Replication Plus" and "TPS My Mirror" software packages are covered by the same patent it accuses Red Hat of infringing in this action (the '439 Patent).

53.    Twin Peaks' proprietary replication software products, namely, "TPS Replication Plus" and "TPS My Mirror," include, *inter alia*, a program called "mount.mfs."  This program is essential to make Twin Peaks' "replication solution" software usable.

54.    On information and belief, rather than develop its own source code to create its proprietary software replication products, Twin Peaks copied substantial portions of open source code into those products, including source code originally authored by Red Hat.  Among the code Twin Peaks improperly copied was that embodied in the "mount" program released in util-linux

version 2.12a, which Twin Peaks copied into the source code for its own "mount.mfs" tool.  Twin Peaks' verbatim and near-verbatim copying of open source and Red Hat source code into its "mount.mfs" tool is pervasive and extensive.

55.     By selling or providing "TPS Replication Plus" and "TPS My Mirror" under proprietary license agreements and not making any of their source code available to the public, Twin Peaks has failed to comply with the explicit conditions of the GPL.  Twin Peaks is thus illegally free-riding off of Red Hat's contributions to util-linux, as well as the contributions of many others in the FOSS community to that software.

56.     By reproducing, copying, and distributing Red Hat's original source code in "TPS Replication Plus" and "TPS My Mirror," without approval or authorization by Red Hat and only subject to its own proprietary license agreement, Twin Peaks is infringing and has infringed Red Hat's exclusive copyrights, and likewise is inducing and has induced its customers to infringe.

57.     Red Hat has not licensed or otherwise authorized Twin Peaks to reproduce, copy or distribute Red Hat's copyrighted source code or any works derived from it, except under the conditions of the GPL, which Twin Peaks has failed to satisfy.

58.     Accordingly, Twin Peaks' sale and distribution of its TPS Replication Plus and TPS My Mirror products infringe Red Hat's copyrights, including those subject to Copyright Reg. Nos. TX 7-557-456 and TX-7-557-458.  Twin Peaks' willful infringement of Red Hat's copyrighted software remains ongoing.

## COUNT I

### (Declaratory Judgment of Non-Infringement)

59.     Defendants incorporate by reference the allegations of Paragraphs 26-31 above as though fully set forth herein.

60.     An actual case or controversy exists between Defendants and Twin Peaks as to whether or not Defendants have infringed/or and are infringing the '439 Patent.

61.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Defendants request a declaration of the Court that Defendants have not infringed and are not currently infringing any claim of the '439 Patent, either directly, contributorily, or by inducement.

62.     On information and belief, prior to filing its First Amended Complaint and at a minimum prior to the filing of this Answer, Plaintiff knew, or reasonably should have known, that the claims of the '439 Patent are not infringed by Defendants, and/or that its claims against Defendants are barred in whole or in part.  Plaintiff's filing of the First Amended Complaint and continued pursuit of its present claims against Defendants in view of this knowledge makes this case exceptional within the meaning of 35 U.S.C. § 285.

## COUNT II

### (Declaratory Judgment of Invalidity)

63.     Defendants incorporate by reference the allegations of Paragraphs 26-31 above as though fully set forth herein.

64.     An actual case or controversy exists between Defendants and Twin Peaks as to whether or not the '439 Patent is invalid.

65.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Defendants request a declaration of the Court that the '439 Patent is invalid because it fails to satisfy conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including, without limitation, Sections 101, 102, 103, and/or 112, because the alleged invention of the '439 Patent lacks utility, is taught by, suggested by, and/or, anticipated or obvious in view of the prior art, is not enabled, and/or is unsupported by the written description of the patented invention, and no claim of the '439 Patent can be validly construed to cover any of Defendants' products.

66.     On information and belief, prior to filing its First Amended Complaint and at a minimum prior to the filing of this Answer, Plaintiff knew, or reasonably should have known, that the claims of the '439 Patent are invalid.  Plaintiff's filing of the First Amended Complaint and continued pursuit of its present claims against Defendants in view of this knowledge makes this case exceptional within the meaning of 35 U.S.C. § 285.

## COUNT III

### (Copyright Infringement)

67.     Red Hat incorporates by reference the allegations of Paragraphs 26-58 above as though fully set forth herein.

68.     Red Hat is, and at all relevant times has been, a copyright owner under United States copyright law in its contributions to the "mount" program in util-linux.  Its copyright registrations for its contributions to the "mount" program include: Copyright Reg. Nos. TX 7-557-456 (August 13, 2012), entitled "Mount – 2.10m" and TX-7-557-458 (August 13, 2012), entitled "Mount – 2.12a." .

69.     As the copyright owner in the "mount" program, Red Hat has the exclusive rights to do and to authorize any of the following: to reproduce the copyrighted work in copies; to prepare derivative works based upon the copyrighted work; and to distribute copies of the copyrighted work pursuant to 17 U.S.C. § 106.

70.     Twin Peaks' reproduction, copying, and distribution of Red Hat's copyrighted code, without approval or authorization by Red Hat, infringes Red Hat's exclusive copyrights in its contributions to the "mount" program pursuant to 17 U.S.C. § 501.

71.     Twin Peaks' development of software products derived from Red Hat's copyrighted code, without approval or authorization by Red Hat, infringes Red Hat's exclusive copyrights in its contributions to the "mount" program pursuant to 17 U.S.C. § 501.

72.     Twin Peaks' distribution of software products that contain Red Hat's copyrighted code, and which are derivative works based on Red Hat's "mount" program, without approval or authorization by Red Hat, infringes Red Hat's exclusive copyrights in its contributions to the "mount" program pursuant to 17 U.S.C. § 501.

73.     Red Hat is entitled to recover from Twin Peaks for infringement of each copyright the amount of its actual damages and any additional profits of Twin Peaks attributable to Twin Peaks' infringement pursuant to 17 U.S.C. § 504.

74.     For each copyright, Red Hat is also entitled to permanent injunctive relief pursuant to 17 U.S.C. § 502 because Red Hat has no adequate remedy at law for Twin Peaks' wrongful conduct because, among other things, (a) Red Hat's copyrights are unique and valuable property whose market value is impossible to assess, thus causing irreparable harm; (b) Twin Peaks' infringement harms Red Hat such that Red Hat cannot be made whole by any monetary award; and (c) Twin Peaks' wrongful conduct, and the resulting damage to Red Hat, is continuing.

75.     As of each copyright's registration, Red Hat is also entitled to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that this Court enter judgment in Defendants' favor against Plaintiff, and issue an order:

1.     That Defendants have not infringed and are not infringing, either directly, indirectly, or otherwise, any valid claim of the '439 Patent;

2.     That the claims of the '439 Patent are invalid;

3.     Granting a permanent injunction preventing Twin Peaks, including its officers, agents, employees and all persons acting in concert or participation with Twin Peaks, from charging that the '439 Patent is infringed by Defendants;

4.     That Twin Peaks take nothing by its First Amended Complaint;

5.     Denying Twin Peaks' request for injunctive relief;

6.     Dismissing Twin Peaks' First Amended Complaint with prejudice;

7.     Declaring this case to be exceptional and awarding Defendants their costs, expenses and reasonable attorney fees incurred in this action under 35 U.S.C. § 285, the Copyright Act, or otherwise;

8.     Granting a permanent injunction preventing Twin Peaks Software Inc. from copying, modifying, distributing, or making any other infringing use of Red Hat's software;

9.     Ordering Twin Peaks to pay Red Hat's damages for Twin Peaks' infringement of Red Hat's copyright in its software;

10.     Ordering Twin Peaks to pay Red Hat's damages for Twin Peaks' violation of the GPL;

11.     Ordering Twin Peaks to account for and disgorge to Red Hat all profits derived from its unlawful acts; and

12.     Awarding any other such relief as is just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 30 of the Federal Rules of Civil Procedure, Defendants hereby request a trial by jury for all issues so triable.

Dated:  September 13, 2012                    Respectfully Submitted,


                                        By:   /s/ Katherine Kelly Lutton
                                              Katherine Kelly Lutton (SBN 194971)
                                              lutton@fr.com
                                              Shelley K. Mack (SBN 209596)
                                              mack@fr.com
                                              Jerry T. Yen (SBN 247988)
                                              yen@fr.com
                                              FISH & RICHARDSON P.C.
                                              500 Arguello Street, Suite 500
                                              Redwood City, CA  94063
                                              Telephone: (650) 839-5070
                                              Facsimile: (650) 839-5071

                                              Adam J. Kessel (Of Counsel)
                                              kessel@fr.com
                                              FISH & RICHARDSON P.C.
                                              ONE Marina Park Drive
                                              Boston, MA 02210
                                              Telephone: (617) 542-5070
                                              Facsimile: (617) 542-8906

                                              Attorneys for Defendants and
                                              Counterclaim-Plaintiffs
                                              RED HAT, INC. AND GLUSTER, INC.